*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROLA KOLAILAT,

UNPUBLISHED
June 20, 2024

Plaintiff-Appellant,

v

No. 369202
Washtenaw Circuit Court

LINDSEY MCKENNETT,

LC No. 23-001489-DC

Defendant-Appellee.

Before: BOONSTRA, P.J., and CAVANAGH and PATEL, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying her application for standing to bring a custody action under the equitable-parent doctrine as extended—per our Supreme Court's recent decision in *Pueblo v Haas*, 511 Mich 345; 999 NW2d 433 (2023)—to same-sex couples who would have married if not for the then-existing ban on same-sex marriage. Plaintiff raises several arguments on appeal, essentially asserting the trial court erred by concluding she failed to establish by a preponderance of the evidence that she and defendant would have married if not for the ban on marriage. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of plaintiff's attempt to obtain custody rights to the minor child, MM, pursuant to the equitable-parent doctrine. The parties were in a same-sex relationship from 2005 until 2014. During the relationship, defendant gave birth to MM, who was conceived via artificial insemination. Defendant also had a daughter from a previous relationship, KM.

The parties have an extensive legal history, and plaintiff has had several appeals before this Court. Pertinent to this appeal, in July 2023, the Michigan Supreme Court issued its decision in *Pueblo*, 511 Mich at 351, holding that "[a] person seeking custody who demonstrates by a preponderance of the evidence that the parties would have married before the child's conception or birth but for Michigan's unconstitutional marriage ban is entitled to make their case for equitable parenthood to seek custody."

Plaintiff, acting *in propria persona*, filed a petition to initiate a custody case, asserting that the parties demonstrated through their actions over several years that their relationship was equivalent to marriage, but legal marriage was not allowed in Michigan at the time. Defendant opposed the motion, arguing that, although the parties were in a relationship at the time the child was conceived and born, defendant would not have chosen to marry plaintiff even if the option had been available. The trial court held an evidentiary hearing at which defendant was the only witness who presented testimony. Following the hearing, the court denied plaintiff's request for standing to seek custody as an equitable parent. Plaintiff subsequently filed a motion for reconsideration and a motion for rehearing. The court denied both motions. This appeal followed.

## II. ANALYSIS

## A. STANDING

Plaintiff argues that the trial court erred by concluding she failed to establish by a preponderance of the evidence that the parties would have married before the child's conception or birth but for Michigan's then-existing marriage ban. We disagree.

"[W]hether a party has standing to seek custody is reviewed de novo." *Id*. at 354. "In child custody disputes, trial court orders and judgments are generally entitled to deference on appeal." *Id*. at 355. But reversal is required when "the trial court made a clear legal error on a major issue." *Id*. (quotation marks and citation omitted). "When a court incorrectly chooses, interprets, or applies the law, it commits legal error that the appellate court is bound to correct." *Id*. (quotation marks and citation omitted).

"Standing generally refers to the right of a plaintiff initially to invoke the power of a trial court to adjudicate a claimed injury." *Id*. (quotation marks and citation omitted). "[I]n cases involving private rights, a litigant must have some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Id*. (quotation marks and citation omitted). Specifically, "[i]n child custody matters, a third party does not have standing to create a custody dispute . . . unless the third party is a guardian of the child or has a substantive right of entitlement to custody of the child." *Id*. at 355-356 (quotation marks and citation omitted; ellipsis in original).

All custody actions are governed by the Child Custody Act, MCL 722.21 *et seq*., which provides the following parental presumption:

> If a child custody dispute is between the parents, between agencies, or between third persons, the best interests of the child control. If the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence. [MCL 722.25(1).]

According to the Child Custody Act, a "parent" is "the natural or adoptive parent of a child." MCL 722.22(i). A "third person" is "an individual other than a parent." MCL 722.22(k). In *LeFever v Matthews*, 336 Mich App 651, 665-666; 971 NW2d 672 (2021), this Court concluded that a "natural parent" included a parent related to the child by birth or through marriage.

-2-

A person with no biological relationship to a child may assert custodial rights as a parent through several avenues, including the equitable-parent doctrine. *Pueblo*, 511 Mich at 357-358. The doctrine states the following:

> A spouse who is not a biological parent has standing to seek custody of a child born or conceived during their marriage when (1) the would-be equitable parent and the child acknowledge the parental relationship or the biological or adoptive parent has cultivated the development of a relationship over a period of time, (2) the would-be equitable parent desires to have the rights afforded a parent, and (3) the would-be equitable parent is willing to pay child support. [*Id*. at 367 (footnote omitted).]

As previously stated, in *Pueblo*, 511 Mich at 374, our Supreme Court held that "a would-be equitable parent has standing if they demonstrate by the preponderance of the evidence that the parties would have married before the child's birth or conception but did not because unconstitutional laws prevented them from doing so." To determine whether a same-sex couple would have married but for the bar, the Supreme Court directed trial courts to consider the factors enumerated in *In re Madrone*, 271 Or App 116, 127-129; 350 P3d 495 (2015), which include:

> A couple's decision to take advantage of other options giving legal recognition to their relationship—such as entering into a registered domestic partnership or marriage when those choices become available—may be particularly significant. Other factors include whether the parties held each other out as spouses; considered themselves to be spouses (legal purposes aside); had children during the relationship and shared childrearing responsibilities; held a commitment ceremony or otherwise exchanged vows of commitment; exchanged rings; shared a last name; commingled their assets and finances; made significant financial decisions together; sought to adopt any children either of them may have had before the relationship began; or attempted unsuccessfully to get married. [*Pueblo*, 511 Mich at 376 (quotation marks omitted).]

The Court explained that the *Madrone* factors were illustrative but not dispositive. *Id.* at 377. "If that threshold test for standing is satisfied, the court may evaluate the equitable-parent factors to determine whether the would-be equitable parent has standing to seek custody and parenting time." *Id.* On the other hand, "the equitable-parent doctrine should not apply to a same-sex couple who would have chosen commitment but not marriage, just as the doctrine does not apply to an opposite-sex couple who chose not to marry." *Id.* at 375.

Throughout defendant's testimony at the hearing, she maintained that, although she considered having a commitment ceremony (or something similar) with plaintiff, she never made any specific plans to marry or have a ceremony with plaintiff. Indeed, defendant specifically testified that she would not have married plaintiff before the conception or when MM was born even if it was allowed under Michigan law. Moreover, defendant acknowledged that plaintiff gave defendant a ring and asked defendant to marry plaintiff; however, defendant told plaintiff the following day that she was not ready to get married. Defendant denied giving a ring to plaintiff or having any type of commitment ceremony.

Similarly, defendant testified that plaintiff used the last name "McKennett" socially, but plaintiff never legally changed her name. Defendant denied telling others that plaintiff was her

-3-

spouse. Rather, defendant thought of plaintiff as her partner and girlfriend. She admitted that she referred to plaintiff as her "wife" on a picture that she gave to plaintiff. However, she testified that she did not remember when she gave this picture to plaintiff, and she further explained that she used the term "wife" as a "term of endearment" because she knew that plaintiff liked and used the term.

In addition, defendant testified that the parties did not commingle their finances before MM was born. Defendant also did not add plaintiff to the deed of her house. Defendant admitted that plaintiff paid for many things during the relationship. She explained that plaintiff was eager to pay for these items, and she allowed plaintiff to do so without having a discussion concerning the parties' specific roles. Defendant testified that she was financially stable without plaintiff's support because she received an inheritance and life insurance proceeds following the deaths of her parents and siblings.

As for MM's conception, defendant testified that she wanted to have another child so that KM would grow up with a sibling. She knew she wanted to have another child before she met plaintiff. She did not decide to have another child to solidify her relationship with plaintiff. She began planning for MM's conception after she graduated from college and when KM was five years old. The parties never took steps for plaintiff to adopt MM or KM.

Plaintiff objected to defendant's testimony on several occasions with the assertion that defendant was being untruthful; however, plaintiff declined to testify and present her own evidence except for some exhibits. See *People v Johnson*, 382 Mich 632, 649; 172 NW2d 369 (1969) (explaining that "arguments of counsel are not evidence nor are they the law"). Considering defendant's testimony, the trial court did not err by determining that plaintiff had not proven by a preponderance of the evidence that the parties would have gotten married before MM's birth if not for Michigan's ban on same-sex marriage. See *Pueblo*, 511 Mich at 376-377. As a result, the threshold test was not satisfied, and the trial court was not required to consider whether plaintiff had standing to seek custody and parenting time under the equitable-parent doctrine. See *id*. at 377.

Plaintiff further argues that exhibits she presented with her motion for reconsideration contradicted defendant's testimony. Specifically, plaintiff refers to two pages from a December 1, 2014 deposition transcript in which the witness[1] stated that plaintiff financially supported the witness and her children, and a blog post dated April 11, 2009, that was presumably authored by defendant, and makes a reference to "my wifey." Even accepting the argument that these exhibits contradict defendant's hearing testimony, plaintiff did not present these exhibits until she moved for reconsideration. Therefore, the trial court was not required to consider these exhibits, and its decision to deny the motion was not improper. See *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987) (stating that a court does not abuse its discretion by "denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order").

---

[1] Presumably the witness was defendant; however, the provided transcript pages do not identify the witness or the action for which the deposition was taken.

## B. JUDICIAL BIAS

Plaintiff also argues that the trial court was biased against her. Specifically, plaintiff asserts the trial court's question to defendant as to whether she was relieved that she could not marry plaintiff showed the court's predisposition toward a particular outcome. We disagree.

An issue is preserved for appeal when it is raised in and decided by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). In addition, "[t]o preserve an evidentiary error for appeal, a party must object at trial on the same ground that it presents on appeal." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 709-710; 922 NW2d 662 (2018). In this case, plaintiff never raised any concerns relating to judicial bias,[2] nor did she object to the court's question to defendant concerning whether she was relieved that she was unable to marry plaintiff. As a result, plaintiff's claims relating to judicial bias or that the court's questioning of defendant was improper are not preserved.

Child custody disputes involve "the welfare of a child, whose interests are directly and often irrevocably affected, but whose voice is not always fully heard, even when there is a lawyer-guardian ad-litem involved." *Quint v Quint*, __ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 368002); slip op at 7. As a result, "judicial prudence favors applying the plain-error standard to an unpreserved claim in a child-custody proceeding." *Id*. To establish plain error,

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. (quotation marks and citation omitted).]

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012). "A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Id*. According to MCR 2.003(C)(1), disqualification of a judge is warranted for the following reasons:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

---

[2] Although plaintiff identifies her claim as "confirmation bias," it appears she is referring to judicial bias.

(c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

(d) The judge has been consulted or employed as an attorney in the matter in controversy.

(e) The judge was a partner of a party, attorney for a party, or a member of a law firm representing a party within the preceding two years.

(f) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has more than a de minimis economic interest in the subject matter in controversy that could be substantially impacted by the proceeding.

(g) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(*i*) is a party to the proceeding, or an officer, director, or trustee of a party;

(*ii*) is acting as a lawyer in the proceeding;

(*iii*) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding;

(*iv*) is to the judge's knowledge likely to be a material witness in the proceeding.

Plaintiff has not presented any evidence that the trial court was biased against her. She asserts that the trial court accepted defendant's testimony despite the compelling evidence she presented. However, defendant was the only witness to offer testimony, and none of exhibits that plaintiff admitted contradicted defendant's testimony. In any event, the trial court found defendant's testimony credible—she clearly testified that she would not have married plaintiff before MM's birth even if the marriage was permitted by state law. This Court defers "to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Moreover, as discussed in the previous section of this opinion, the trial court's ruling was not improper in light of the evidence presented.

Plaintiff appears to assert that the trial court's questioning of defendant established its bias in defendant's favor. The court asked defendant the following questions:

*The Court*: I have a question for you. Did you ever feel—because you kind of testified—let me get this right—that sometimes you—you went along with some of [plaintiff's] suggestions of marriage to appease her, do I have that right?

*The witness*: Yes.

> *The Court*: Did you ever feel relieved that you couldn't legally marry [plaintiff]?

> *The witness*: Yes, I did.

The trial court sought to clarify defendant's testimony concerning her intent to marry, which was the fundamental question addressed at the evidentiary hearing. Plaintiff, who was acting *in propria persona*, struggled to ask appropriate questions. She often attempted to testify while questioning defendant and argued with defendant when she did not agree with defendant's responses. Moreover, defendant stated that she was nervous and that she was struggling to clearly articulate her answers. This exchange appears to show the court's attempt to get to the crux of defendant's testimony amid the disorganization of the hearing. Moreover, the court asked whether defendant felt relieved that she could not legally marry plaintiff. The court did not indicate that defendant *should* feel relieved. As the trier of fact, the court was also free to believe or disbelieve defendant's response. After the court questioned defendant, the court took a short recess and then permitted plaintiff to cross-examine defendant. She could have explored and attempted to discredit defendant's prior testimony in this regard. In any event, plaintiff has failed to show that the court's questions were the result of bias or affected the outcome of the proceedings. See *People v Baker*, 157 Mich App 613, 617; 403 NW2d 479 (1986) ("A trial judge may ask questions of a witness designed to clarify points and elicit additional facts provided the questions are not partial, prejudicial or argumentative."). See also *Quint*, ___ Mich App at __; slip op at 7.

## C. EVIDENTIARY CLAIMS

Plaintiff raises several evidentiary claims on appeal. These claims revolve around her assertion that the trial court erred by admitting defendant's testimony at the evidentiary hearing because the testimony was false. We disagree.

At the outset, plaintiff's evidentiary claims are not preserved. Although she generally objected to defendant's testimony as untrue, she did not object on the same grounds that she now presents on appeal. See *Nahshal*, 324 Mich App at 709-710. As a result, these claims will be reviewed under the plain-error standard. See *Quint*, ___ Mich App at ___; slip op at 7.

First, plaintiff appears to argue that defendant's testimony was unfairly prejudicial under MRE 403.[3] At the time of the evidentiary hearing in this case, MRE 403 provided that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, other than asserting that defendant's testimony was not truthful, plaintiff does not explain how the evidence was unfairly prejudicial. As the trier of fact, the trial court was tasked with determining whether defendant's testimony was credible. In addition, plaintiff was permitted to present her own

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). This opinion relies on the version of the rules in effect at the time this matter was decided.

witnesses and evidence to contradict defendant's testimony. The fact that plaintiff disagreed with defendant's testimony does not make that testimony inadmissible. See *Pueblo*, 511 Mich at 374 (explaining that "whether the parties mutually desired to marry but could not is a fact-specific inquiry best addressed on remand where the trial court can evaluate evidence and judge credibility").

Further, to the extent plaintiff argues that the existence of a monitor on the witness stand showed that defendant was improperly influenced by outside sources, this claim was addressed and rejected by the trial court. In the order dismissing plaintiff's motion for a new hearing, the court explained that the monitor was court controlled and allowed witnesses to view electronic exhibits. Plaintiff has not presented any evidence to show that the monitor was even used during the evidentiary hearing, let alone that it was somehow used for an improper purpose. As a result, plaintiff has not shown that the admission of defendant's testimony was unfairly prejudicial or that it was improperly influenced by an outside source. See *Quint*, ___ Mich App at ___; slip op at 7.

Second, plaintiff argues that the trial court improperly limited the scope of plaintiff's cross-examination of defendant by denying the use of objective evidence of defendant's inconsistencies.

MRE 611 concerns the trial court's authority over the examination of witnesses and presentation of evidence. According to MRE 611(a), "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Further, MCR 611(c) concerns the scope of cross-examination and provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility. The judge may limit cross-examination with respect to matters not testified to on direct examination."

Plaintiff contends that the trial court erred by limiting her questioning and evidence to the period before and at the time of MM's conception and birth. However, according to *Pueblo*, 511 Mich at 374, the period in question is "before the child's birth or conception." As a result, the court properly limited the presentation of evidence to the appropriate period.

Moreover, plaintiff's assertion that the trial court erred by not allowing her to present evidence—such as the 2002 blog post and 2014 deposition testimony—to show that defendant was not credible is without merit because she did not attempt to present the evidence at the evidentiary hearing. Rather, she attached this evidence to her motion for reconsideration. As a result, the court did not err by not allowing evidence that was not presented at the time of the initial hearing.

This evidence was also not relevant to the question at issue in this case—whether defendant would have married plaintiff if not for the then-existing ban against same-sex marriage before MM was born. Plaintiff asserts that the blog post contradicts defendant's testimony that she was shy. However, the blog post, even if authored by defendant, was posted in 2002, which was three years before the parties met and eight years before MM was born. In other words, the blog post does not provide any insight concerning the parties' relationship or personalities during the applicable period. In addition, the two pages from the 2014 deposition indicate that plaintiff continued to provide financial support to defendant and her children after the relationship ended. However, the evidence at the hearing did not address events that occurred after the end of the relationship

because the focus was on the period before MM's birth. In any event, defendant acknowledged that plaintiff provided financial support during the relationship. Therefore, plaintiff has not shown that the court improperly limited questioning or evidence that would have contradicted defendant's testimony. See *Quint*, ___ Mich App at ___; slip op at 7.

Third, plaintiff asserts that the trial court erred by allowing defendant to testify without proper disclosure and sufficient factual foundation to render an opinion.

At the outset, plaintiff's assertion that defendant did not know her well enough to provide testimony concerning plaintiff's personality is unreasonable considering the parties were in a romantic relationship for nine years and plaintiff's overall claim was that the parties would have gotten married if given the option. The trial court also rejected this assertion. In fact, the court asked plaintiff, "[I]f she doesn't know you, how would—how would you make an argument that you were going to get married?" Plaintiff simply responded that all defendant's testimony was untruthful. The court then told plaintiff that she could make such an argument during her closing but that it was not a proper objection.

The trial court then asked defendant to describe plaintiff's personality before 2010 from defendant's perception. Defendant testified that plaintiff had "a really intense personality." She further described plaintiff as friendly, but plaintiff was suspicious of people's intentions. Defendant believed that plaintiff "misread people's intentions a lot of the time, but on a surface level she was very friendly with a lot of different people." According to defendant, plaintiff "really just swept in and wanted to meet [defendant's] every need and whim . . . ." For instance, defendant would say that she wished she had a hot chocolate, and plaintiff would immediately offer to go to the store and get her one. Further, defendant described plaintiff as romantic, but she was almost "smothering."

For the first time on appeal, plaintiff challenges this testimony on the basis that it was admitted without proper notice in violation of the "rule." Plaintiff does not identify the "rule" that she claims was violated; however, we believe she is referring to MRE 404, which limits the admission of character evidence. According to MRE 404(a), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." MRE 404(b) pertains to the admission of "any other crime, wrong, or act." In a criminal case, the prosecutor must provide notice of the intent to admit evidence related to such acts. MRE 404(b)(2).

This was a civil proceeding, so no notice was necessary. See MRE 404(b)(2). Moreover, testimony concerning plaintiff's personality during the relationship did not constitute improper character evidence. Rather, defendant was testifying about the parties' relationship and their respective roles in that relationship. She was providing an explanation as to why their relationship was unhealthy and she did not take any steps toward marriage. As previously discussed, plaintiff had the opportunity to present her own evidence concerning this subject, and the trial court was tasked with determining the credibility of the submitted evidence. As a result, plaintiff has not shown that the court erred by allowing this testimony. The fact that plaintiff disagreed with the testimony does not mean it was inadmissible. See *Quint*, ___ Mich App at ___; slip op at 7.

### D. MOTIONS FOR RECONSIDERATION AND FOR A NEW HEARING

Finally, plaintiff argues that the trial court erred by denying her motion for reconsideration and her motion for a new hearing.

This Court reviews "a trial court's decision on a motion for reconsideration for an abuse of discretion." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008). MCR 2.119 is the court rule concerning motion practice. In regard to a motion for reconsideration or for rehearing, MCR 2.119(F)(3) provides:

> Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

According to plaintiff, the trial court erred by denying her motion for reconsideration and motion for rehearing because defendant presented false testimony. However, as previously discussed, plaintiff was permitted to challenge the accuracy of defendant's testimony at the evidentiary hearing by presenting her own witnesses and evidence. Moreover, even assuming that the exhibits attached to the motion for reconsideration—such as the 2002 blog post and 2014 deposition transcript excerpt—were admissible, plaintiff never explained why she did not attempt to present these exhibits at the hearing. The trial court was also well aware of plaintiff's allegation that defendant's testimony was false. A trial court does not abuse its discretion by "denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order." *Woods*, 277 Mich App at 630 (quotation marks and citation omitted). Accordingly, the trial court did not abuse its discretion in denying plaintiff's motion for reconsideration and motion for rehearing. See *id*. at 629.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Sima G. Patel